## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JAMES LEE JAMERSON,

       Plaintiff,

       v.                              Case No. 5:17-3205-JAR-KGG

JAMES HEIMGARTNER, et al.,

       Defendants.

## MEMORANDUM AND ORDER

Plaintiff James Lee Jamerson brings this pro se civil rights action pursuant to 42 U.S.C. § 1983 and Kansas law against multiple defendants in their individual and official capacities, each of whom interacted with Plaintiff during his incarceration.  Seven defendants remain parties to this action: (1) James Heimgartner, Warden at El Dorado Correctional Facility ("EDCF"); (2) Douglas Burris, Deputy Secretary of Corrections designee for the Kansas Department of Corrections ("KDOC"); (3) Ron Baker, a Major at Lansing Correctional Facility ("LCF"); (4) Daniel Jackson, a unit team member at EDCF; (5) Laurie Rohling, a unit team member at EDCF; (6) Randolph Johnson, a disciplinary hearing officer at EDCF; and (7) Amanda King, a mental health counselor at EDCF.

This matter is before the Court on King's Motion for Judgment on the Pleadings pursuant to Fed. R. Civ. P. 12(c) (Doc. 63); the remaining Defendants' ("KDOC Defendants") Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. 56); and Plaintiffs' Motion for Extension of Time (Doc. 67).  For the reasons set forth more fully below, King's motion is granted, the KDOC Defendants' motion is granted, and Plaintiff's motion is denied.

## I.      Procedural History

Plaintiff first filed this pro se civil rights action pursuant to 42 U.S.C. § 1983 and Kansas state law on November 22, 2017.  The Court issued its first "Memorandum and Order and Order to Show Cause" on February 7, 2018, noting Plaintiff's claims appeared to be barred by the statute of limitations and Plaintiff had not demonstrated he was entitled to statutory or equitable tolling.[1]  The Court ordered Plaintiff to show good cause, in writing, by March 7, 2018 as to why his Complaint should not be dismissed.  Plaintiff filed a response to the Court's show cause order.[2]  In its subsequent Memorandum and Order dismissing Plaintiff's claims as barred by the statute of limitations, the Court did not address whether Plaintiff had demonstrated he was entitled to equitable tolling.  Instead, the Court reasoned that "[e]ven if Plaintiff could successfully argue equitable tolling regarding his remaining claims, Plaintiff has failed to state a plausible claim for relief."[3]  The Court dismissed the action on April 25, 2018.  Plaintiff appealed, and the Tenth Circuit remanded the case for further proceedings consistent with its Order because the Court had not fully addressed whether equitable tolling applied to Plaintiff's claims.[4]

Following the appeal and remand, Plaintiff was permitted to file an Amended Complaint (Doc. 27), and the Kansas Department of Corrections filed a *Martinez* report.[5]  Plaintiff's remaining claims against King are that in December 2011, "Amanda King, did violate Jamerson's Eighth and Fourteenth Amendment rights of the United States Constitution and the

---

[1] Doc. 12 at 4–6.

[2] Doc. 13.

[3] Doc. 14 at 3.

[4] Doc. 22.

[5] Doc. 36; *see also* Doc. 52 (amended *Martinez* Report supplementing the initial report).

state of Kansas statute K.S.A. 75-6106 (Kansas Tort Claims Act) and Kansas Bill of rights 9 for the defendant failing to follow KDOC IMPP (Internal Management Policy and procedure)."[6] Plaintiff's remaining claims against the KDOC Defendants are for: (1) violating Plaintiff's Eighth and Fourteenth Amendment rights by falsifying documents so that Plaintiff would be labelled a gang member who trafficked contraband and would remain in extended administrative segregation; (2) violating Sections 9 and 19 of the Kansas Bill of Rights; (3) violating the Kansas Tort Claims Act; and (4) violating various KDOC policies and regulations.

## II.     Plaintiff's Motion for Extension of Time

The KDOC Defendants filed their Motion to Dismiss, or in the Alternative, for Summary Judgment on November 27, 2019.  Under the Local Rules for the District of Kansas, Plaintiff had until December 18, 2019 to file his response.[7]  King filed her Motion for Judgment on the Pleadings on December 13, 2019.  Plaintiff had until January 3, 2020 to file his response to that motion.[8]  The Court did not receive a response to either motion by these respective deadlines, nor did the Court receive a motion for extension of time.  As such, the Court ordered Plaintiff to show cause, in writing, on or before March 13, 2020, why the motions should not both be granted as unopposed.[9]  Plaintiff was further ordered to file any response to the motions by March 13, 2020.[10]

In his April 14, 2020 motion for extension of time, Plaintiff requests an additional forty-five days to respond to the Court's Show Cause Order, including filing responses to the pending

---

[6] Doc. 27 at 8.

[7] D. Kan. Rule 6.1(d)(2).

[8] *Id.*

[9] Doc. 66.

[10] *Id.*

dispositive motions.  He explains that he "has basically been unable to attend the law library or use its research computers for the past month" because of the prison's response to the ongoing COVID-19 pandemic.[11]  Plaintiff also states that "the research computers have been basically useless for almost a month" because of a "glitch that disabled the research program."[12]  Plaintiff requests "an additional 45 days" for him "to respond to the courts [sic] order and all the defendants' pending motions."[13]

Under D. Kan Rule 6.1(a), "parties must file the motion [for extension of time] before the specified time expires.  Absent a showing of excusable neglect, the court will not grant extensions requested after the specified time expires."  Excusable neglect is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant.[14]  The determination of whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission," including "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith."[15]  Perhaps the single most important factor in determining whether neglect is excusable is fault in the delay.[16]  Whether the moving party's underlying claim is meritorious should also be taken into consideration.[17]

---

[11] Doc. 67 at 1.

[12] *Id.* at 2.

[13] *Id.* at 3.

[14] *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 391–92 (1993).

[15] *Id.* at 395; *see also Bishop v. Corsentino*, 371 F.3d 1203, 1206–07 (10th Cir. 2004).

[16] *Jennings v. Rivers*, 394 F.3d 850, 856–57 (10th Cir. 2005) (citing *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004)).

[17] *Id.* at 857 (citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983)).

Further, "[a] court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay)."[18]

Plaintiff has failed to show excusable neglect.  His response deadline to the KDOC Defendants' motion was December 18, 2019—approximately four months ago; similarly, his response deadline to King's motion was January 3, 2020.  Plaintiff did not attempt to file any response to these motions, and the time for doing so has long since passed.  His motion provides no explanation for missing these initial deadlines, which passed well before the COVID-19 pandemic impacted his access to the resources needed to prepare his responses.  Having received no response, the Court then issued its Order to Show Cause, giving Plaintiff until March 13, 2020 to show cause as to why his claims should not be dismissed.  Plaintiff did not abide by that deadline either.  And while the Court understands that the COVID-19 pandemic may have impacted Plaintiff's access to certain prison resources, Plaintiff's own motion states that these access issues only began a month ago, after his deadlines passed.  This does not explain his failure to file a response to the Court's show cause order on or before March 13, 2020.  The length of delay, the repeated missed deadlines, and Plaintiff's fault in the delay all weigh firmly against a finding of excusable neglect.  Plaintiff's motion is therefore denied.

## III.    Defendant King's Rule 12(c) Motion

In her Motion for Judgment on the Pleadings, King seeks dismissal under Rule 12(c) on grounds that the only claims against her arose on December 10, 2011, and are thereby barred by the statute of limitations.  She also asserts that Plaintiff has failed to state a claim against her.  Plaintiff's Amended Complaint is unclear which of King's actions or inactions he alleges were unlawful; however, his only allegations related to King relate to Plaintiff's segregation review in

---

[18] *Id.* (citing *Hancock v. Okla. City*, 857 F.2d 1394, 1396 (10th Cir. 1988)).

2011.  Plaintiff's claims against the KDOC Defendants, which are described more fully in the section addressing their motion, include allegations related to incidents in 2013 and 2014.

### A.  Legal Standard

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6).[19]  To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[20]  Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[21]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[22]

The plausibility standard announced in *Bell Atlantic v. Twombly*[23] seeks a middle ground between heighted fact pleading and "allowing complaints that are no more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action,' which the Court stated 'will not do.'"[24]  *Twombly* does not change other principles, such as that a court must accept all factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[25]

---

[19] *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003).

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[21] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[22] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[23] 550 U.S. 544 (2007).

[24] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[25] *Id.* (citing *Twombly*, 550 U.S. at 556).

The Supreme Court has explained the analysis as a two-step process. For purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true," but is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"[26]  Thus, the Court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not so entitled.[27]  Second, the Court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[28]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29]

On a Rule 12(b)(6) motion, a court judges the sufficiency of the complaint accepting as true the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff.[30]  These deferential rules, however, do not allow a court to assume that a plaintiff "can prove facts that [he] as not alleged or that the defendants have violated the . . . laws in ways that have not been alleged."[31]  The facts narrated by the plaintiff must at least outline or adumbrate a viable claim in order to "pass Rule 12(b)(6) muster."[32]  Dismissal is a harsh remedy to be used cautiously so as to promote the liberal rules of pleading while protecting the interests of justice.[33]

---

[26] *Iqbal*, 556 U.S. at 678.

[27] *Id.* at 679.

[28] *Id.*

[29] *Id.* at 678.

[30] *Shaw v. Valdez*, 819 F.2d 965, 968 (10th Cir. 1987).

[31] *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

[32] *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)).

[33] *Id.*

Because Plaintiff is a pro se litigant, the Court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[34]  However, the Court may not provide additional factual allegations "to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[35]  The Court need only accept as true Plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[36]  Additionally, a pro se litigant is not excused from complying with the rules of the Court, and is subject to the consequences of noncompliance.[37]

### B.  Discussion

At the times relevant to Plaintiff's claims, Defendant King was a mental health counselor at EDCF.  Plaintiff does not expressly describe any action or inaction King took that would result in liability; however, Plaintiff generally asserts that she was part of a group in 2011 that allegedly falsified documents to keep Plaintiff in long-term segregation.  King argues that Plaintiff's claims against her are time-barred, and that Plaintiff has not demonstrated he is entitled to statutory or equitable tolling.  King also argues that even if Plaintiff had timely brought these claims, he has failed to state a claim against her.

### 1.  Statute of Limitations

The statute of limitations for claims brought under 42 U.S.C. § 1983 are governed by the personal injury statutes for the state in which the federal district court sits.[38]  While state law

---

[34] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[35] *Id.*

[36] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

[37] *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994) (citing *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

[38] *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008) (citing *Wilson v. Garcia*, 471 U.S. 261 (1985)).

provides the statute of limitations period, federal law determines the date on which the claim accrues, and the statute begins to run.[39]  State law also determines any tolling of the limitations period, although federal law may allow for additional tolling in rare circumstances.[40]  Since filing his Amended Complaint, Plaintiff has not made any tolling arguments, notwithstanding the district court and Tenth Circuit both finding that, unless Plaintiff could demonstrate his claims were entitled to equitable tolling, they were facially subject to dismissal as time-barred.  In his Amended Complaint, Plaintiff did not make any arguments regarding his entitlement to equitable tolling, nor have any of his filings mentioned it.  There are therefore no tolling arguments before the Court.

All claims brought under § 1983 are uniformly characterized as personal injury torts for statute of limitations purposes.[41]  In Kansas, the statute of limitations period for personal injury actions is two years.[42]  The primary issue for the Court's consideration, therefore, is when the causes of action against King accrued, and whether Plaintiff's claims are time-barred.

Under federal law, § 1983 claims generally rely on the common law tort principle that the claim accrues when the plaintiff "has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief."[43]  "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."[44]  It is not necessary that the

---

[39] *Id.* (citing *Wallace v. Kato*, 549 U.S. 384 (2007)).

[40] *Id.*

[41] *Wallace*, 549 U.S. at 387.

[42] K.S.A. § 60-513(a)(4).

[43] *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Febar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

[44] *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005).

plaintiff know of all the evidence that he ultimately relies on in order for the statute of limitations to accrue.[45]

Plaintiff's Amended Complaint clearly states his claims against King accrued on December 10, 2011.  On that day, Plaintiff alleges King violated KDOC policies related to his administrative segregation.[46]  In an earlier pleading, which has since been superseded by the Amended Complaint, Plaintiff attempts to argue the statute of limitations should be tolled both because he had to wait for a final review of his disciplinary hearings and because he was not aware of his physical injuries until after his release from segregation.  But Plaintiff does not allege on what date his disciplinary hearings related to the 2011 claim concluded, nor does he tie any of his physical injuries to King's actions.  Moreover, no facts supporting equitable tolling appear in the Amended Complaint, even though both this Court and the Tenth Circuit had explained Plaintiff needed to demonstrate entitlement to equitable tolling to avoid dismissal.

In sum, the claims against King are time-barred.  Plaintiff was notified that he needed to demonstrate he was entitled to either statutory or equitable tolling in order to prevent this result. Despite multiple opportunities to do so—including filing an Amended Complaint after the issue was brought to his attention and filing multiple other motions with the Court—Plaintiff has not demonstrated he is so entitled.

### 2.  *Failure to State a Claim*

Even if Plaintiff had demonstrated he was entitled to equitable tolling rendering his claims timely, Plaintiff has not stated a plausible civil rights claim against King.  Although the Federal Rules of Civil Procedure set out a liberal pleading standard, a complaint must "make

---

[45] *Id.*

[46] The Court notes that the Amended Complaint is not clear as to what actions or inactions he attributes to King.  This issue will be discussed when evaluating whether Plaintiff has stated a claim against King.

clear exactly who is alleged to have done what to whom" such that a defendant is given "fair notice as to the basis of the claims against . . . her, as distinguished from collective allegations."[47]

The Amended Complaint makes a general allegation that eleven individuals violated Plaintiff's Eighth and Fourteenth Amendment rights "by falsifying documents in order to keep the plaintiff in solitary confinement."[48]  Plaintiff adds that he "received a false disciplinary report/conviction by the defendants who under false pretense and with malice wanted the plaintiff labeled as an inmate who conspired to move contraband and a security threat group member . . . of an unknown prison gang."[49]  The only reference in the Amended Complaint to King individually states:

> [O]n or about the tenth day of December 2011, Amanda King, did violate Jamerson's Eighth and Fourteenth Amendment rights of the United States Constitution and the state of Kansas statute K.S.A. 75-6106 (Kansas Tort Claim Act) and Kansas Bill of Rights 9 for the defendant failing to follow KDOC IMPP (Internal Management Policy and procedure) 20-105, 20-106, and 20-109, 02-118 staff conduct.[50]

Even under the liberal pleading standard of Fed. R. Civ. P. 8(a), and in consideration of the liberal construction of pro se parties' pleadings, this allegation fails to state a particularized claim for relief against King.  Plaintiff was previously instructed to "allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances" by the Court.[51]  He was also instructed to refer to each defendant individually when describing the alleged wrongful actions each took.  Despite this guidance, and despite being permitted to amend

---

[47] *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

[48] Doc. 27 at 6.

[49] *Id.* at 6–7.

[50] *Id.* at 8.

[51] *See* Doc. 26.

his complaint, Plaintiff has failed to do so.  Accordingly, even if Plaintiff had demonstrated he was entitled to equitable tolling of the statute of limitations, his claims against King would be dismissed for failure to state a claim against her.

## IV.   KDOC Defendants' Motion

The KDOC Defendants seek dismissal or, alternatively, summary judgment on the following grounds: (1) Eleventh Amendment immunity for all official capacity claims, which eliminates this Court's subject-matter jurisdiction over these claims; (2) qualified immunity for all individual capacity claims because the KDOC Defendants' actions did not violate clearly established law; (3) failure to allege personal participation by each named defendant; (4) statute of limitations; and (5) improper invocation of the Kansas Bill of Rights and the Kansas Tort Claims Act ("KCTA").

### A.  Legal Standards

#### 1.  Rule 12(b)(1) Standard

The KDOC Defendants move for dismissal, in part, under Rule 12(b)(1) for lack of subject-matter jurisdiction.  "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'"[52]  Federal district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, or where there is diversity of citizenship.[53]  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes

---

[52] *Gunn v. Minton*, 568 U.S. 251, 251 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).

[53] 28 U.S.C. §§ 1331,1332.

apparent that jurisdiction is lacking."[54]  The "burden of establishing" a federal court's subject-matter jurisdiction "rests upon the party asserting jurisdiction."[55]

A motion to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes one of two forms: a facial attack or a factual attack.[56]  A "facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint," and in reviewing a facial attack on the complaint, "a district court must accept the allegations in the complaint as true."[57]  In reviewing a factual attack, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends," which does not allow a reviewing court to "presume the truthfulness of the complaint's factual allegations."[58]  Rather, a court has "wide discretion to allow affidavits, other documents, and [to conduct] a limited evidentiary hearing to resolve disputed jurisdictional facts" under Rule 12(b)(1).[59]

### 2.  Rule 12(b)(6) and Alternative Motion for Summary Judgment

The KDOC Defendants also move to dismiss under Rule 12(b)(6), or in the alternative, for summary judgment on all claims against them.  In arguing their motion, the KDOC Defendants rely on facts contained in the *Martinez* report.[60]  If the Court on a motion to dismiss under Rule 12(b)(6) looks to matters that were not attached to the complaint or incorporated into the complaint by reference, it generally must convert the motion to a Rule 56 motion for

---

[54] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1152 (10th Cir. 2015) (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[55] *Id.* at 1151.

[56] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

[57] *Pueblo of Jemez*, 790 F.3d at 1148 n.4 (citing *Holt*, 46 F.3d at 1002).

[58] *Id.*

[59] *Id.* (citing *Holt*, 46 F.3d at 1003).

[60] Doc. 52.

summary judgment.[61]  This includes information and documents attached to a *Martinez* report.[62] A *Martinez* report may not be used at the motion to dismiss stage to refute facts pled by a plaintiff or to resolve factual disputes.[63]  The Court therefore considers the KDOC Defendants' motion under the summary judgment standard.

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[64] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[65]  "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[66]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[67]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[68]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[69]  In attempting to meet this standard, a movant

---

[61] Fed. R. Civ. P. 12(d); *GFF Corp. v. Assoc. Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

[62] *See, e.g., Ketchum v. Cruz*, 961 F.2d 916, 919 (10th Cir. 1992).

[63] *See McAdams v. Wyo. Dep't of Corr.*, 561 F. App'x 718, 720 (10th Cir. 2014) (collecting cases).

[64] Fed. R. Civ. P. 56(a).

[65] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[66] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[67] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[68] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[69] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

who does not bear the ultimate burden of persuasion at trial need not negate the nonmovant's claim; rather, the movant need simply point out to the Court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.[70]

Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[71]  The nonmoving party may not simply rest upon its pleading to satisfy its burden.[72]  Rather, the nonmoving party must "set forth specific fast that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[73]  In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[74]  The Court will deem admitted any fact properly set forth by the movant unless the fact is specifically controverted by the nonmovant.[75]

"Courts must take added precautions before ruling on a motion for summary judgment when a pro se litigant is involved . . . especially when enforcing these [technical] requirements might result in a loss of the opportunity to prosecute or defend a lawsuit on the merits."[76]  At the same time, it is not the proper function of a district court to assume the role of advocate for a pro

---

[70] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler*, 144 F.3d at 671); *see also Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010).

[71] *Anderson*, 477 U.S. at 256; *Celotex,* 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[72] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[73] *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71); *see also Kannady*, 590 F.3d at 1169.

[74] *Adler*, 144 at 671.

[75] D. Kan. Rule 56.1(a); Fed. R. Civ. P 56(e).

[76] *Wilson v. Skiles*, No. 02-3190-JAR, 2005 WL 466207, at *1 (D. Kan. Feb. 4, 2005) (citing *Hass v. U.S. Air Force*, 848 F. Supp. 926, 929 (D. Kan. 1994)).

se litigant, and pro se parties are expected to follow the Federal Rules of Civil Procedure and the Local Rules, as all litigants must.[77]

Finally, summary judgment is not a "disfavored procedural shortcut."[78]  On the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[79]

### B.  Uncontroverted Facts

The KDOC Defendants filed this motion on November 27, 2019.  That same day, they sent Plaintiff a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment," explaining Plaintiff's burden under Federal Rule of Civil Procedure 56 and District of Kansas Local Rule 56.1.[80]  As already discussed, Plaintiff failed to timely respond to the motion and to the Court's Order to Show Cause and has failed to demonstrate excusable neglect for failing to do so.  Under D. Kan. Rule 7.4, the court is permitted to grant a motion as uncontested when no responsive brief or memorandum is filed.

But this standard is modified in the context of a motion for summary judgment: "It is improper to grant a motion for summary judgment simply because it is unopposed."[81]  Under Fed. R. Civ. P. 56(e), the Court may deem a fact undisputed where the nonmoving party fails to address it.[82]  The rule also permits the Court to grant summary judgment "if the motion and

---

[77] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also McDaniels v. McKinna*, 96 F. App'x 575, 578 (10th Cir. 2004).

[78] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[79] *Id.* (quoting Fed. R. Civ. P. 1).

[80] Doc. 59.

[81]*Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *EEOC v. Lady Baltimore Foods, Inc.*, 643 F Supp. 406, 407 (D. Kan. 1986)).

[82]Fed. R. Civ. P. 56(e)(2).

supporting materials—including the facts considered undisputed—show that the movant is entitled to it."[83]

Because the Court denies Plaintiff's request for leave to respond out of time, it utilizes the procedure set forth in Rule 56(e).  Under Rule 56(e)(2), the Court will deem undisputed the facts presented in Defendants' summary judgment brief, to the extent they are supported by the record.

As previously mentioned, Defendants rely on the *Martinez* report to support their statements of uncontroverted fact.  On summary judgment, the *Martinez* report "'is treated like an affidavit, and the court is not authorized to accept its fact findings if the prisoner has presented conflicting evidence.' Accordingly, a court may not rely on a *Martinez* report to resolve material disputed facts."[84]  Because Plaintiff failed to respond, the Court may accept the findings presented in the *Martinez* report.  With these considerations in mind, the following facts are uncontroverted or viewed in the light most favorable to Plaintiff as the nonmoving party.

Plaintiff has been in KDOC custody since February of 2002.  He has been housed at four different KDOC facilities.  The actions relevant to Plaintiff's claims occurred while he was housed at EDCF and LCF.

In June of 2010, an official at LCF spoke to Plaintiff about rumors the officer had heard about another inmate—Matthew Astorga—wishing to harm Plaintiff.  Plaintiff responded that he was not aware of those threats.  Then, on June 19, 2010, Plaintiff taped magazines around his torso as makeshift body armor and carried a homemade metal knife.  He stabbed Astorga multiple times, inflicting wounds on Astorga's forearm and lower back.  Plaintiff was placed in

---

[83]Fed. R. Civ. P. 56(e)(3).

[84]*Breedlove v. Costner*, 405 F. App'x 338, 342–43 (10th Cir. 2010) (quoting *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)).

prehearing detention.  A segregation review board reviewed Plaintiff's actions two days later and determined that Plaintiff should remain in segregation until his disciplinary hearing.  During his disciplinary hearing, Plaintiff pled guilty to a disciplinary report for fighting and having dangerous contraband.  As a result, Plaintiff was ordered to serve sixty days in disciplinary segregation.  Plaintiff was also placed on "Other Security Risk" ("OSR") status and a note was placed in his file that the stabbing was gang-related.

Plaintiff appeared before the segregation review board on July 8, 2010 to ask about his OSR status because he disagreed with its determination.  Plaintiff was told that there were multiple reasons for his OSR status.  Plaintiff was permitted to meet with the segregation review board again on July 19, 2010.  Plaintiff was transferred to EDCF on July 30, 2010, and he was placed in long-term segregation.

While he was in segregation, Plaintiff's status was reviewed on a monthly basis by the administrative segregation board.  Plaintiff was allowed to—and often did—attend these reviews.  The administrative segregation board recommended Plaintiff be released from segregation and placed into the Behavior Management Program ("BMP") in November 2011.  BMP is a program that reintegrates inmates who have been in long-term segregation back into the general population.  BMP takes nine months to complete, followed by another three months of supervision before the inmate is fully reintegrated into the facility's general population.  If an inmate is recommended for BMP, the Program Management Committee will review the inmate's information and either permit or deny placement into BMP.  Although the administrative segregation review board recommended Plaintiff for BMP, the Program Management Committee denied Plaintiff's placement based, in part, on an investigation that noted Plaintiff was suspected of drug-related activity while in segregation.  A few months later, Plaintiff was again

recommended by the administrative segregation review board for placement into BMP, and the Program Management Committee again denied placement based on the note that Plaintiff was suspected of drug-related activity while in segregation.

In April of 2013, EDCF staff informed the investigations officer that Plaintiff's 2010 stabbing incident was determined not to be gang-related. Plaintiff was again recommended for BMP, and the Program Management Committee approved his placement. Plaintiff completed the first two steps of BMP successfully and moved to the general population in February 2014.

In April of 2014, while Plaintiff was in the shower area, unit team member Rohling noticed Plaintiff set something on the ground between the shower dividers. Another inmate, Emory Walker, picked the item up. When Walker left the shower area, Rohling asked to speak with him. Walker was carrying a small plastic bag with a leafy green substance. Walker admitted it was either K2 or synthetic cannabis. Plaintiff received a disciplinary report for this incident and was placed back into segregation. Plaintiff appealed the report to the Secretary of Corrections, who ultimately affirmed. Plaintiff then filed a state habeas corpus action based on this disciplinary report.

Plaintiff's claims, which are described more fully below, stem from these incidents. He argues that multiple defendants falsified his records so that he would be labelled as an "OSR" and remain in long-term segregation. He also claims the KDOC Defendants failed to follow internal KDOC policies and regulations in 2013 when he was released from segregation, and again in 2014 when he was found guilty of a disciplinary report and placed back in segregation.

### C. Discussion

Plaintiff brings claims against the KDOC Defendants in both their official and individual capacities. The KDOC Defendants argue that all official capacity claims against them are barred

by the Eleventh Amendment.  Because the Eleventh Amendment implicates this Court's subject-matter jurisdiction, it is evaluated under Rule 12(b)(1).  The KDOC Defendants argue that they are entitled to qualified immunity for all individual capacity claims against them.  Like King, the KDOC Defendants argue that Plaintiff's claims against them are time-barred and fail to state a claim because Plaintiff does not allege personal participation by each defendant.  The Court will address each argument in turn.

### 1.  Eleventh Amendment

The KDOC Defendants move for dismissal under Rule 12(b)(1) of all official capacity claims against them based on the Eleventh Amendment.  The Eleventh Amendment provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens," and "applies regardless of whether a plaintiff seeks declaratory or injunctive relief, or money damages."[85]  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."[86]

"The paradigmatic case for Eleventh Amendment immunity is 'a suit in which the State or one of its agencies or departments is named as the defendant.'"[87]  The Eleventh Amendment

---

[85] *Steadfast Ins. Co. v. Agric. Ins. Co.*, 507 F.3d 1250, 1252 (10th Cir. 2007).

[86] *Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1169 (10th Cir. 2015) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)).

[87] *Jones v. Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)).

confers immunity from suit where the State is the "real, substantial party in interest."[88]  "The operative consideration is whether the claimant 'is seeking to impose a liability which must be paid from public funds in the state treasury.'"[89]  The Tenth Circuit has made it clear that where a claimant seeks relief against a KDOC official in his or her official capacity, the party seeks judgment against the KDOC itself, rendering the claim as one against the sovereign.[90]  The Eleventh Amendment therefore applies to any official capacity claims against the KDOC Defendants.

Eleventh Amendment immunity, however, is not absolute.  There are a handful of narrow exceptions.[91]  Here, the only potentially applicable exception is described in *Ex parte Young*,[92] which allows a plaintiff to request prospective injunctive relief against a state official for an ongoing violation of federal law.[93]  None of Plaintiff's claims identify ongoing violations of federal law; rather, they identify prior, discrete incidents of alleged wrongdoing without any reference to continuing violations.  Eleventh Amendment immunity therefore applies; the KDOC Defendants are entitled to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction over all official-capacity claims against them.

## 2. *Qualified Immunity*

The KDOC Defendants also argue they are entitled to qualified immunity for all individual-capacity claims brought against them.  Qualified immunity gives government officials

---

[88] *Pennhurst*, 465 U.S. at 101.

[89] *Jones*, 466 F. App'x at 699 (quoting *Edelman v. Jordan*, 415 U.S. 651, 678 (1974)).

[90] *Id.* at 699–700 (collecting cases).

[91] *See id.* (describing the three exceptions to Eleventh Amendment immunity).

[92] 209 U.S. 123 (1908).

[93] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

breathing room to make reasonable but mistaken judgments about open legal questions.[94]
"[B]ecause qualified immunity is designed to protect public officials from spending inordinate time and money defending erroneous suits at trial," the defense triggers a modified summary judgment standard.[95]  The initial burden rests on the plaintiff, rather than the defendants; and the plaintiff must "clear two hurdles:" (1) demonstrate that the defendants violated his constitutional or statutory rights; and (2) demonstrate that the right was clearly established at the time of the alleged unlawful activity.[96]

In determining whether a plaintiff has demonstrated a violation of his rights and that the right was clearly established at the time, courts must view the facts and draw reasonable inferences in the light most favorable to the party opposing summary judgment.[97]  "[T]his usually means adopting . . . the plaintiff's version of the facts," unless that version "is so utterly discredited by the record that no reasonable jury could have believed him."[98]  Additionally, "because at summary judgment [the court is] beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record."[99]  In that sense, the Court does not discard the Rule 56 process, but relies upon facts supported by the record, while viewing those facts and reasonable inferences therefrom in the light most favorable to Plaintiff.[100]

Here, the record reflects that in June of 2010, Plaintiff stabbed another inmate with a homemade knife while wearing magazines taped to his torso as makeshift body armor.  The

---

[94] *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

[95] *Riojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013).

[96] *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009)).

[97] *Scott v. Harris*, 550 U.S. 372, 376–80 (2007).

[98] *Id.*

[99] *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

[100] *Id.* (citing *Scott*, 550 U.S. at 378, 380).

victim of the stabbing was a gang-affiliated inmate.  Plaintiff was placed in segregation after this event.  The segregation review board informed Plaintiff that he was being labelled as an OSR, and Plaintiff was given two opportunities to meet with the board prior to his placement in long-term administrative segregation to discuss his OSR status.  In 2013, Plaintiff was considered for reintegration into the general prison population through BMP.  Though the segregation review board recommended Plaintiff for placement in BMP, the Program Management Committee denied his placement based on investigation notes that Plaintiff was suspected of drug-related activity while in segregation.  Eventually, Plaintiff was approved for BMP.  Shortly after being placed in general population as part of his final step in BMP, Plaintiff was given a disciplinary report for providing another inmate K2 or synthetic cannabis while in the shower area.  Plaintiff appealed that disciplinary report, but the Secretary of Corrections affirmed it.

Plaintiff fails to show that any of these actions constituted violations of either his Eighth or Fourteenth Amendment rights.  A prison official may be held to have violated the Eighth Amendment only when two components are satisfied: (1) an objective component requiring the inmate show that he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) a subjective component requiring the official acted with a culpable state of mind constituting "deliberate indifference."[101]  Deliberate indifference exists when an official "knows of and disregards excessive risk to inmate health or safety."[102]  Deliberate indifference requires "a higher degree of fault than negligence."[103]  Plaintiff has not demonstrated that his first placement in segregation, denial of entry into BMP based on an investigation, or second

---

[101] *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

[102] *Farmer*, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."); *Gonzales v. Martinez*, 403 F.3d 1179, 1186 (10th Cir. 2005).

[103] *Hovater v. Robinson*, 1 F.3d 1063, 1066 (10th Cir. 1993); *see also Farmer*, 511 U.S. at 835.

placement in segregation posed a substantial risk of serious harm to him.  Nor has Plaintiff

demonstrated that any of the KDOC Defendants acted with deliberate indifference in making

those respective decisions.

Plaintiff also asserts a Fourteenth Amendment claim.  In order to establish a due process

violation, "a prison inmate challenging the conditions of his confinement must show that the

defendants deprived him of a constitutionally protected liberty interest."[104]  An inmate's liberty

interests are not infringed unless his confinement "imposes atypical and significant hardship" on

him, as compared to "the ordinary incidents of prison life."[105]  In deciding whether segregation

infringes a constitutionally-protected liberty interest, courts are to consider the following four

factors: (1) whether the segregation relates to and furthers a legitimate penological interest, such

as safety or rehabilitation; (2) whether the conditions of placement are extreme; (3) whether the

placement increases the duration of the inmate's confinement; and (4) whether the placement is

indeterminate.[106]

Here, Plaintiff has not established that he had a constitutionally protected liberty interest.

Plaintiff's first placement in segregation resulted after Plaintiff stabbed another inmate multiple

times in the back and forearm with a homemade metal knife.  His placement into segregation

furthered the safety of other inmates and officers in the facility, a legitimate penological interest.

Although Plaintiff alleges his segregation was prolonged, he does not otherwise argue his

placement was extreme.  His placement did not increase the duration of his confinement.  And

Plaintiff's placement was reviewed on a monthly basis.  Plaintiff was permitted and often did

---

[104] *Grissom v. Roberts*, 902 F.3d 1162, 1169 (10th Cir. 2018) (citing *Steffey v. Orman*, 461 F.3d 1218, 1221 (10th Cir. 2006)).

[105] *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

[106] *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007).

attend the reviews.  Plaintiff's second placement into administrative segregation similarly does

not implicate a protected liberty interest.  This placement came shortly after Plaintiff was placed

into general population.  An officer observed Plaintiff place an item on the ground of the shower

and another inmate picking up the item.  After showering, the officer spoke to the other inmate,

who had a small bag containing K2 or synthetic cannabis.  Plaintiff's subsequent placement in

segregation therefore related to a legitimate penological interest.  Plaintiff does not argue that his

segregation conditions were extreme, nor that this placement increased the duration of his

confinement.  Further, as with his first placement in segregation, Plaintiff's placement was

reviewed monthly and he was permitted to participate in the review process.  Plaintiff has

therefore failed to demonstrate the violation of a protected liberty interest.

Since Plaintiff is unable to demonstrate that the KDOC Defendants violated some

constitutionally-established right, it is not necessary to consider whether the right was clearly

established at the time of the alleged violation.  Accordingly, Plaintiff has failed to overcome

either hurdle needed to defeat qualified immunity.  The KDOC Defendants are therefore entitled

to qualified immunity on all individual capacity claims.

### 3.  *Statute of Limitations*

The KDOC Defendants next argue that, even if Eleventh Amendment immunity and

qualified immunity did not apply, Plaintiff's claims are time-barred.  As discussed at length in

connection with King's motion, Plaintiff has not demonstrated that he is entitled to equitable or

statutory tolling for any of his claims even though this Court and the Tenth Circuit made clear

that failure to do so would result in dismissal of his claims.

### 4.   *Personal Participation*

The KDOC Defendants move for dismissal or summary judgment based on multiple other grounds related to deficiencies in Plaintiff's pleadings.  They argue that Plaintiff has not alleged personal participation by the individual KDOC Defendants and has therefore failed to state a claim for relief.  As with King, the Court agrees with the KDOC Defendants.  Plaintiff has been instructed multiple times to identify who committed what actions in order to give each defendant fair notice of the allegations against him or her in accordance with Fed. R. Civ. P. 8(a).  Plaintiff has failed to do so, instead bringing general, non-specific allegations against the KDOC Defendants collectively.  Consequently, the KDOC Defendants are entitled to dismissal of the claims against them.

### 5.   *State Law Claims*

In addition to his § 1983 claims, Plaintiff asserts state law claims for violations of the Kansas Bill of Rights and the KTCA.  There is no diversity jurisdiction in this case, and the Court has dismissed Plaintiff's federal claims that would give rise to federal question jurisdiction.[107]  Under 28 U.S.C. § 1367, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  The Court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction."[108]  In exercising its discretion, the Court considers "the nature and extent

---

[107] *See* 28 U.S.C. §§ 1331, 1332

[108] 28 U.S.C. § 1367(c)(3).

of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction."[109]

To the extent Plaintiff asserts state law claims for violations of the Kansas Bill of Rights and the KTCA, the facts giving rise to those claims were closely intertwined with the allegations underlying his dismissed § 1983 claims.  This case has been pending in federal court for more than two years and the pretrial proceedings have been extensive.  Given the voluminous record in this case, judicial economy counsels in favor of exercising supplemental jurisdiction.  The convenience of the parties is also served through exercising supplemental jurisdiction because the parties have filed dispositive motions regarding the state law claims, and discovery produced in this case relates to those claims.

The KDOC Defendants argue that Plaintiff's claims under the Kansas Bill of Rights and the KCTA are not cognizable because 42 U.S.C. § 1983 does not permit state constitutional claims to be brought.  The KDOC Defendants add that the Kansas Constitution does not permit actions to be brought directly under it, and that the KTCA only permits liability where the claimant has demonstrated there would be liability if the governmental entity were a private person.[110]  The Court agrees that Plaintiff has failed to allege any state law tort claim that would give rise to liability under the state law of Kansas, nor has he demonstrated entitlement to direct relief under the Kansas constitution.

## V.     Conclusion

Plaintiff has not demonstrated excusable neglect entitling him to an extension of time to

---

[109] *Anglemyer v. Hamilton Cty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995) (quoting *Thatcher Enter. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990)).

[110] Doc. 57 at 14 (quoting *Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1203 (D. Kan. 2018)); *see also Prager v. Kan. Dep't of Revenue*, 20 P.3d 39, 64 (Kan. 2001).

respond to the KDOC Defendants' or King's motion.  Defendant King is entitled to dismissal

under Rule 12(c).  On the federal claims, the KDOC Defendants are entitled to Eleventh

Amendment immunity on the official-capacity claims, and qualified immunity on the individual-

capacity claims.  Alternatively, the Court finds that Plaintiff has not demonstrated he is entitled

to equitable tolling, rendering the federal claims time-barred.  Finally, the Court finds that

Plaintiff has failed to state a claim for relief on his federal and state law claims under the liberal

pleading standard of Rule 8(a).

  **IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for

Extension of Time (Doc. 67) is **denied**.

  **IT IS FURTHER ORDERED BY THE COURT** that Defendant King's Motion for

Judgment on the Pleadings (Doc. 63) is **granted**.

  **IT IS FURTHER ORDERED BY THE COURT** that the KDOC Defendants' Motion

to Dismiss Or, in the Alternative, for Summary Judgment (Doc. 56) is **granted**.

  **IT IS SO ORDERED.**

  Dated: April 21, 2020

       S/ Julie A. Robinson
       JULIE A. ROBINSON
       CHIEF UNITED STATES DISTRICT JUDGE